UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA

       - v. -                                      **MEMORANDUM AND ORDER**

JUAN VILLAR, a/k/a "Jose                         07 Cr. 639 (NRB)
Nieves,"

       Defendant.

------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On July 16, 2007, defendant Juan Villar was indicted on a charge of illegal reentry to the United States after having been deported subsequent to a conviction for an aggravated felony. An arrest warrant was issued the same day. He was not arraigned on this charge until August 2021, fourteen years later. Defendant now moves to dismiss the indictment on the ground that the delay violated his Sixth Amendment right to a speedy trial. For the reasons explained below, the motion is denied.

## BACKGROUND

The parties do not dispute the relevant facts in the record. Defendant is a citizen of the Dominican Republic who first entered the United States in August 1981 and applied for temporary residence status in May 1989. Government's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss ("Opp'n") Ex. 3. On February 17, 1993, defendant was convicted of a narcotics

offense in Rhode Island and was sentenced to a ten-year term of imprisonment, eight years and nine months of which were suspended. Opp'n at 2. Given his conviction, defendant's application for temporary residence status was rejected, and he was deported to the Dominican Republic on July 30, 1993. Opp'n Exs. 4-6.

After defendant reentered the United States without authorization, he was arrested in New York in May 2001 for another narcotics offense, this time under the false name "Jose Nieves." Opp'n Ex. 7 at 1. Defendant further misrepresented to New York law enforcement authorities that he was born in Puerto Rico. Id. at 4. On November 23, 2001, defendant was convicted and sentenced to an indeterminate term of between three years' and life imprisonment. Id. at 1. On March 10, 2003, while on work release, defendant absconded from state custody, at which point New York authorities issued a warrant for his arrest. Opp'n Ex. 8.

In spring 2006, federal immigration authorities were alerted to the fact that defendant had been arrested in New York under a false name and a team led by Special Agent Thomas Killbride, an agent with the Immigration and Naturalization Service's Office of Investigation and a member of the U.S. Marshals Service Fugitive Task Force, began the process of locating him. Killbride Declaration ("Killbride Decl.") ¶¶ 12-15. Special Agent Killbride

followed his standard procedure when searching for a fugitive charged with illegal reentry, consisting of running searches across criminal and commercial databases, as well as reviewing arrest and probation records, in order to identify the most likely locations where the fugitive could be found. Id. ¶ 17. After identifying these locations, agents would travel to the sites in question to either apprehend the fugitive or to conduct interviews for potentially relevant information. Id. Of the addresses identified by the special agent and his team for defendant, three were determined to be the most promising. Id. Two of the addresses identified were associated with "Jose Nieves," while the third was the address provided by defendant to probation at his 2001 sentencing. Opp'n Ex. 7 at 3-4. According to contemporaneous notes, law enforcement officers visited all three locations in November 2006, in addition to conducting interviews at each location, but were unsuccessful in locating defendant. Killbride Decl. ¶¶ 20-23.

As noted earlier, on July 16, 2007, a federal grand jury returned a one-count indictment charging defendant with illegally reentering the United States after having been deported following a conviction for an aggravated felony and issued a warrant for his arrest. Immigration authorities continued to conduct periodic

checks for defendant, including entering defendant's name into the National Crime Information Center ("NCIC") wanted persons database in September 2007. Opp'n Ex. 9. In total, the Government conducted ten of these periodic checks following the filing of the indictment until defendant was arrested. Id.

In April 2018, defendant was arrested in Providence, Rhode Island for a narcotics offense, this time using the false name "Luis Grey." Opp'n Ex. 10 at 5-9. Law enforcement officers subsequently found identification cards in defendant's residence and vehicle bearing photographs of defendant and the names "Angel Quidley Grey," "Luis Manuel Rodriguez Martinez," and "Luis M Rodriguez." Id. After his arrest and after being read his Miranda rights, defendant acknowledged that he was Juan Villar. Id. Federal immigration authorities were alerted to defendant's capture following his arrest, and on June 5, 2018, an Assistant United States Attorney obtained a writ of habeas corpus *ad prosequendum*, ordering defendant's transfer to the custody of the federal government for transfer to the Southern District of New York. Opp'n Exs. 11, 19. However, Rhode Island authorities, insisting on prosecuting their case first, refused to transfer defendant to federal custody. Opp'n Ex. 15. Thereafter, defendant was convicted on October 24, 2019 and sentenced to a ten-year term

of imprisonment, with seven years suspended. Opp'n Ex. 12.

After completing his sentence on August 4, 2020, defendant was transferred to New York state custody on the basis of a lodged absconder warrant to complete the remainder of his New York state sentence. Following immigration authorities learning of the transfer on August 11, 2020, an immigration detainer for defendant was filed on December 31, 2020. Opp'n Ex. 14. The United States Attorney's Office filed writs of habeas corpus *ad prosequendum* on July 26 and 27, 2021, seeking defendant's transfer from New York custody to federal custody. Opp'n Exs. 16, 17. Defendant was taken into federal custody on August 6, 2021 and arraigned on the indictment.

## DISCUSSION

The leading case addressing the Sixth Amendment right to a speedy trial is Barker v. Wingo, 407 U.S. 514 (1972). In Barker, the Supreme Court created a framework to analyze whether a delay violates the fundamental right to a speedy trial. This framework examines: (1) the length of delay between indictment and arrest; (2) the reason for the delay; (3) whether the defendant timely asserted their right to a speedy trial; and (4) the prejudice to the defendant that resulted from the delay. Id. at 530.

These four factors comprise a "balancing test," where none of

Case 1:07-cr-00639-NRB   Document 13   Filed 10/08/21   Page 6 of 15

the factors functions as "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. As a result, the Court looks to both the conduct of the defendant and the Government in determining whether a violation has occurred.

## I. Length of the Post-Indictment Delay

The first Barker factor considers whether post-indictment delay was "uncommonly long" for the offense at issue. Doggett v. United States, 505 U.S. 647, 651 (1992). This factor acts as a "triggering mechanism," which, if met, leads to consideration of the other factors. Barker 407 U.S. at 530. While the Supreme Court has not established a definitive time period that warrants further review, both parties agree that the 14-year delay between defendant's indictment and his federal arrest is "presumptively prejudicial" under Barker and warrants an analysis of the remaining Barker factors. Defendant's Memorandum of Law in Support of His Motion to Dismiss the Indictment ("Def. Mem.") at 2-3; Opp'n at 8-9.

## II. Reason for the Delay

The second Barker factor requires the Court to examine "the reason the government assigns to justify the delay." Barker, 407 U.S. at 531. This requires a recognition of the Government's

responsibility to timely charge criminal defendants, balanced with an understanding of potentially valid reasons for a delay. Deliberate attempts by the Government to delay for strategic advantage are "weighted heavily against the government," while a "valid reason, such as a missing witness, should serve to justify appropriate delay." Id.  Negligence by the Government is "weighted less heavily but nevertheless should be considered." Id. at 530. In situations in which a defendant is a fugitive, the Sixth Amendment is "rarely violated," although the Government "is under an obligation to exercise due diligence in attempting to locate and apprehend the accused." United States v. Moreno, 789 F.3d 72, 79 (2d Cir. 2015).  However, failure to locate a defendant does not necessarily weigh against the Government.  The Court must determine whether the Government exercised the appropriate level of diligence in searching for defendant.  We find here that the Government did.

**A. Efforts to Locate Defendant Prior to His 2018 Arrest**

In this case defendant made use of multiple false identifications, repeatedly lied to law enforcement officers as to his true identity each time that he was apprehended, and fled from New York prior to his arrest in 2018.  This Court has previously held that where a defendant affirmatively conceals his identity

through the use of false identification and a false name, such a finding weighs "heavily" against the defendant. United States v. Valiente-Mejia, No. 04 Cr. 772, 2009 WL 3401210, at *8 (S.D.N.Y. Oct. 19, 2009); United States v. Blanco, 861 F.2d 773, 780 (2d Cir. 1988) ("[The] use of a false name and other evasive techniques. . .supports the government's contention that. . .[defendant] had no interest in a trial."); United States v. Penn, 434 F. Supp. 2d 229, 231 (S.D.N.Y. 2006) (second Barker factor is considered "heavily" against a defendant where he used a false name and false identification). Here defendant exhibited a pattern of behavior that marked an intention to avoid being located by the Government, and the Court "cannot casually reward [him] for going out of [his] way to avoid detection." Valiente-Mejia, 2009 WL 3401210 at *24.

Defendant's argument that the Government did not exercise "reasonable diligence" to locate him is unavailing. Def. Mem. at 4. According to an affidavit from the special agent in charge of the investigation, the Government conducted a search of three locations associated with defendant, including his last known address. Killbride Decl. ¶¶ 19-23. Defendant argues that the actions taken by investigators prior to the filing of the indictment are "irrelevant." Defendant's Reply Memorandum of Law

in Support of Defendant's Motion to Dismiss ("Def. Reply") at 2, n.1.  However, the Government's actions cannot be viewed in a vacuum.  The searches conducted by federal immigration authorities occurred in November 2006, seven months prior to filing the indictment.  Opp'n Ex. 1.  Defendant cites no case law finding that the Government must redo prior work following indictment, especially where previously searches have proved fruitless.  Following his indictment, defendant's name was inputted into the NCIC wanted persons database by federal immigration authorities who ran periodic checks through commercial and criminal databases.  Courts have held that these efforts in combination with physical searches satisfy the diligence requirement of the Sixth Amendment speedy trial analysis.  United States v. Cabral, 979 F.3d 150, 161 (2d Cir. 2020) (collecting cases).[1]

Defendant also contends that the Government's failure to interview defendant's family members, including the mother of his children, should be held against the Government.  Def. Reply at 2.  However, a review of the record provides a reasonable explanation for the Government's decision not to interview defendant's

---

[1] The case cited by defendant in his memorandum does not support his position that the Government's efforts would lead to a finding in his favor.  In *United States v. Saric*, No. 95 Cr. 661, 2011 WL 31079, at *9 (S.D.N.Y. Jan. 4, 2011), the court found that, despite negligence on the part of the Government in only searching for the defendant four times in a criminal database over a four-year period, the Government's actions "should be weighed less heavily" than the defendant's choice to flee from prosecution.

relatives. According to the affidavit of the special agent in charge of locating defendant, although he had contact information for defendant's girlfriend, it was not his practice to contact relatives or close associates in cases of illegal reentry due to the risk that they would "tip [a defendant] off about law enforcement efforts to locate him." Killbride Decl. ¶ 24. Given that defendant was not living with the relatives in question, and given his claim that he was unaware of the indictment against him, we do not hold this decision against the Government. There is no realistic indication that defendant's relatives would have pointed the Government to his location, and there is a strong possibility that they could have alerted defendant, who was already making use of false identifications, to the fact that federal law enforcement authorities were looking for him, causing him to engage in additional efforts to evade prosecution.

**B. Delay Following the 2018 Arrest**

Following defendant's arrest in Rhode Island on narcotics charges, the Government immediately sent Providence law enforcement the federal warrant for defendant's arrest and an immigration detainer. Federal authorities additionally obtained a writ of habeas corpus *ad prosequendum*, which was rejected by Rhode Island authorities. Following Rhode Island's refusal to

-10-

transfer defendant to federal custody, federal authorities did not engage in further litigation. The Government argues that its decision not to pursue litigation at that time should not weigh against it. The Second Circuit has not directly addressed this issue, although it has found that delay in waiting for resolution of other criminal charges in another jurisdiction does not weigh heavily against the Government where there is no "tactical advantage." Rayborn v. Scully, 858 F.2d 84, 91 (2d Cir. 1988). Other Circuits have found this to be a "valid" or "neutral" reason for delay. United States v. Watford, 468 F.3d 891, 902 (6th Cir. 2006) ("[W]aiting for another sovereign to finish prosecuting a defendant is without a question a valid reason for delay"); United States v. Brown, 325 F.3d 1032, 1035 (8th Cir. 2003) (finding no government negligence where federal authorities waited to obtain custody of a defendant pending state prosecution). We find the delay pending resolution of the Rhode Island charges to be valid. The Government's actions were not an attempt to create a strategic advantage, but rather the result of the Government avoiding "throw[ing] parallel federal and state prosecutions into confusion and disarray" with "innumerable opposing writs." United States v. Watford, 468 F.3d 891, 902 (6th Cir. 2006). Rather, federal authorities made a concerted effort to bring defendant into custody

via a writ of habeas corpus, filed an immigration detainer, and avoided needless litigation once Rhode Island made it clear that it would reject efforts to bring defendant into federal custody.

After defendant was brought back to New York to serve the remainder of his sentence, the Government obtained and filed a writ of habeas corpus *ad prosequendum* as his sentence approached expiration. There is no indication that the Government acted deliberately to delay defendant's arraignment for a strategic purpose, and we find this delay to be neutral in our analysis. Thus, we find the delay under the second Barker factor to weigh against defendant.

### III. Timeliness of the Defendant's Assertion of the Speedy Trial Right

The third Barker factor considers whether a defendant asserted his right to a speedy trial in a timely fashion. Barker, 407 U.S. at 530. While courts will weigh a belated invocation of the speedy trial right against a defendant who has established that they are uninterested in a speedy trial, a delay in raising the speedy trial right does not necessarily weigh in favor of the Government. Rayborn, 858 F.2d at 92-93. As defendant may not have been aware of his indictment until his transfer to federal custody, the Court does not find that defendant's failure to timely

assert his speedy trial right weighs against him.  Rather, we find defendant's assertion of his speedy trial right after his arrest to be merely neutral, with no weight given to either defendant or the Government.

## IV.  Prejudice to the Defendant

Finally, Courts analyze the fourth Barker factor by examining whether there has been any prejudice to a defendant based on the three interests protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration, (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  Barker, 407 U.S. at 532.  Defendant has not identified any of these interests that were impaired by his delay.  Nor can he.  Defendant was not incarcerated during the post-indictment period (prior to his arrest in 2018), and he does not claim anxiety or concern, as he asserts he was not aware that he was facing federal charges. Def. Reply at 4.  Given that the relevant evidence for a charge of illegal reentry is the physical presence of defendant within the United States and the record of his prior conviction and deportation, there is also no impairment of his defense.

Instead, the only claimed prejudice that defendant identifies is that he "lost the ability to serve concurrent time," which

-13-

theoretically would have allowed him to be deported following the end of his state sentence. Def. Mem. at 5. The Second Circuit addressed this exact argument in United States v. Lainez-Leiva, 129 F.3d 89, 92 (2d Cir. 1997), and found that a defendant "ha[s] no right to a concurrent sentence," and that the loss of an opportunity for a concurrent sentence is not prejudice under Barker that "give[s] rise to a Sixth Amendment violation." Id.; see also United States v. Cyphers, 556 F.2d 630, 636 (2d Cir. 1977) (no speedy trial violation where defendant was prevented from receiving a federal sentence that was partially concurrent with a sentence in Ohio); United States v. White, 985 F.2d 271, 276 (6th Cir. 1993) (same).

Defendant's claim of prejudice on this basis is also speculative and fails to consider the interplay between state and federal sentences. Even if defendant had been brought into federal custody and convicted on the illegal reentry charge prior to his prosecution on the Rhode Island narcotics charges, there is no guarantee that he would have been sentenced in federal court prior to being sentenced in Rhode Island. Further, it is unlikely that Rhode Island would have run its sentence concurrently with a federal sentence, particularly considering that Rhode Island rejected attempts by federal immigration authorities to bring

-14-

defendant into federal custody, and there is no certainty that a federal court that waited to sentence defendant until after he had been sentenced in Rhode Island would have decided to run its sentence concurrently either. Additionally, had defendant been brought into federal custody after he was returned to New York to serve the remainder of his state sentence, the time on his state sentence would have been suspended while he was in federal custody. Therefore, there would have been no discernible benefit to defendant had he been brought into federal custody immediately upon his return to New York.[2]

## CONCLUSION

For the foregoing reasons, the Court denies defendant's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 10.[3]

**SO ORDERED.**

Dated:   New York, New York
         October 8, 2021

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[2] Defendant also argues that the delay in this case causes "presumptive prejudice" that requires a dismissal of the indictment solely based on the length of the delay. Def. Mem. at 6. To the extent that any delay is attributable to the Government, it is not sufficient to support an irrebuttable presumption of prejudice. *Moreno*, 789 F.3d at 82.

[3] The parties shall propose the next conference date to the Court by October 15, 2021. The Court excludes time under the Speedy Trial Act until then, finding that the ends of justice in allowing this continuance outweigh the best interests of the public and the defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A).